# EXHIBIT A

**SCHWARTZ, HANNA, OLSEN & TAUS, P.C.**
**David M. Taus, Esq.  Bar ID 0292821985**
3 Amboy Road
Metuchen, New Jersey 08840
(908) 3222-2333
**Attorneys for Plaintiff, Yvonne Correa**

| | |
|---|---|
| **YVONNE CORREA,**<br><br>                  **Plaintiff,**<br><br>VS.<br><br>**TOTAL CARE PHYSICAL THERAPY, P.C. , ANASTASIOS BOUZIOTIS, JOHN DOES 1-10, AND XYZ CORP. 1-10,**<br><br>                  **Defendants.** | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SOMERSET COUNTY<br>DOCKET NO.:<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

      Plaintiff, Yvonne Correa ("Correa" or "Plaintiff"), who resides at 86 Finderne Avenue #A2, Bridgewater, New Jersey 08807, by way of this Complaint against the defendants, Total Care Physical Therapy, P.C. ("TCPT" or "Total Care"), Anastasios Bouziotis ("Bouziotis"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively the "Defendants") hereby says:

### I.   Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD") (Disability Discrimination); (2) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD") (Retaliation); (3) breach of express contract; (4) breach of the implied covenant of good faith and fair dealing; (5) breach of implied contract; and (6) a violation of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq*. ("Wage and Hour Law"); (7) a violation of the New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1, *et seq.* ("Wage and Payment Act");  and (8) a violation of the  Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA").

2. This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3. Venue is appropriate in this court since Plaintiff resides in Somerset County, New Jersey; Plaintiff worked in Somerset County, New Jersey, Defendants have an office and do business in Somerset County, New Jersey; and the causes of action accrued in Somerset County.

## II. Parties

4. Plaintiff was an in-house biller and later an office manager for Defendant TCPT located 719 Route 206, Suite 104, Hillsborough, New Jersey 08844, Somerset County. TCPT provides physical therapy services to patients.
5. Defendant Anastasios Bouziotis ("Bouziotis") is the principal and/or owner of TCPT.
6. At all times referred to in this complaint, employees of the Corporate Defendant(s), who are referred to herein, were acting within the scope of their employment at the workplace during working hours or the Corporate Defendant(s) ratified, embraced and added to their conduct to the extent that their actions went beyond the scope of their employment.

## III. Factual Allegations

7. Ms. Correa is a 57-year-old female who suffers from the disability of Colon/Rectal Cancer and has had a colostomy bag administered to her since August 2018. During her employment, Ms. Correa was repeatedly discriminated against due to her disability, and was subjected to a hostile work environment based on her disability in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD").

8. Ms. Correa began working for Total Care on April 24, 2017 as an In-House Biller. After a short amount of time, Ms. Correa was promoted to Office Manager. After returning back to work after colorectal cancer surgery in October 2018, she was demoted from Billing and Office Manager to the position of Billing Manager, but was not working on billing. The billing was being done by someone by the name of Danielle from Performance PT in

Delaware. Ms. Correa remained at that position until her termination on May 5, 2019.

9. Ms. Correa could not begin to do billing as Total Care had an already existing contract with a billing company, KAREO which would be void on June 1, 2017. Until that time, Ms. Correa took on other functions of helping to run the office as Office Manager.

10. In December of 2017, Ms. Correa was given a Christmas Bonus of $1,000 from Bouziotis, who praised her for her hard work. She was also given a $1.00 per hour raise after her 90-day probation/introductory period. At her annual review in April 2018 she was praised again for her work and was given another $1.00 per hour raise at that time.

11. Less than a month after her annual review, in May 2018, plaintiff received the news that her cancer had returned. She immediately informed Total Care.

12. Ms. Correa required Abdominoperineal Resection Surgery ("APR") and would need to have a colostomy bag inserted. She then again immediately informed Total Care that her surgeon would be scheduling this surgery for August 2018.

13. Bouziotis then started making hostile and discriminatory comments to Ms. Correa by saying things like, "Your Butt-Hole will now be located on your stomach" and "Instead of pooping out of your Butt, your poop will now be redirected to come out of your stomach!" These comments made Ms. Correa terribly uncomfortable as she was already nervous to have this very serious surgery done.

14. A week after she notified Total Care of her surgery date and anticipated return date, Ms. Correa received a text from Debbie, a consultant to Total Care, asking her to call later that evening. Debbie suggested to Ms. Correa that she should apply for Unemployment Benefits instead of Temporary Disability Benefits. Ms. Correa asked why she would apply for Unemployment Benefits when she was anticipating to return to work after she was cleared

by her doctors. Debbie said, "Well, that office can be stressful."

15. Ms. Correa approached Bouziotis with her concerns and he replied, "I have to hire an Outside Biller while you are out in order to keep my revenue coming in. Don't worry, you will have your job upon your return." This made Ms. Correa feel more comfortable about going on her leave.

16. However, two weeks prior to Ms. Correa going on leave, the front desk receptionist unexpectedly quit. Ms. Correa repeatedly asked if Bouziotis would like her to post the job listing online or review resumes prior to her leaving. Bouziotis replied that Justin (a Physical Therapy Aide) will be helping out and Krista will help interview a new Receptionist. Ms. Correa later found out that Krista was actually the Office Manager from one of Debbie's Consulting offices in Delaware that Bouziotis started to have run the office while Ms. Correa was on leave.

17. Correa's doctor gave her a letter stating that she was cleared to work as of November 1, 2018. During the beginning of October 2018, Ms. Correa repeatedly called Bouziotis to let him know of her return to work date. Ms. Correa informed Bouziotis that she wanted to come into the office on October 25, 2018 to review mail and organize her things.

18. During the first few days after Ms. Correa returned to the office, she was very isolated and made to feel unwelcomed by Bouziotis and the staff. In fact, no one welcomed her back or asked her how she was feeling or doing. Two days after Ms. Correa returned, Bouziotis rolled into her office on an exam chair and started catching her up on what she had missed while on disability leave.

19. During this meeting, Bouziotis placed a new job description on Ms. Correa's desk with her new duties and asked her to sign it which she reluctantly complied with. Ms. Correa, and

the rest of the Total Care staff was to answer or direct any questions or concerns to Krista, the Office Manager in Delaware. When Ms. Correa asked Bouziotis why she was demoted, he replied, "You did nothing wrong, I just need someone who will be here for me. You need more time to heal. You look pale." Bouziotis also made various comments referring to Ms. Correa's cancer, despite the fact she was cleared by her doctors to be back at work.

20. That evening, Ms. Correa text messaged Bouziotis and said she felt unwanted and demoralized.

21. After this discussion, the animosity and isolation that Ms. Correa was subjected to at work began to worsen and Ms. Correa continued to feel extremely unwelcomed. Bouziotis and the rest of the staff rarely came into Ms. Correa's office or spoke with her as had previously done before her disability leave.

22. On one occasion, Bouziotis even had the audacity to ask Ms. Correa not to speak about her cancer, surgery, or health while at Total Care.

23. Ms. Correa was also excluded from training for the new Clinicient Billing software. Instead, Bouziotis had Physical Therapy Aides learn Clinicient to cover for the Receptionist as needed.

24. Ms. Correa could no longer answer phones, schedule patients, cover the Front Desk, or enter Patient demographics into Clinicient because she was never trained to do so. Additionally, Ms. Correa was no longer permitted to deposit paper checks, even though the deposit machine was located on her desk.

25. Other examples of Defendants' blatant disparate treatment include that they never re-registered Ms. Correa's finger for time clock scanning, even after she asked Bouziotis to do so several times.

5

26. During the holiday season in 2018, Ms. Correa did not initially receive a Christmas Bonus or a Christmas card like the rest of the staff, even though she observed Bouziotis giving cards and bonus checks to everyone else.

27. In March 2019, the staff was informed Bouziotis would be transferring patients and billing back to the original office management program, WEBPT/KAREO. Ms. Correa had been in charge of that program since June 1, 2017.

28. In April 2019, Bouziotis sat down with Ms. Correa and the new receptionist, Bianca, and informed them that he was going to use a new consulting company. Accordingly, they both needed to take online courses to show them how to be "more professional in producing a more successful business." Bouziotis even gloated about how the classes were going to cost thousands of dollars. Ms. Correa enthusiastically informed Bouziotis that she was more than willing to take the courses.

29. About a week later, Bouziotis informed Ms. Correa that the office would be using a new billing company, Therabill. Ms. Correa was shocked and asked, "So, I am not doing the billing?" Bouziotis replied "No, I have someone named Denise doing the billing but you will be able to see what she is doing." So, Ms. Correa again asked to clarify, "I can see, but I am not actually do the billing?" Bouziotis replied, "Yes."

30. A few days later, Ms. Correa witnessed Bianca printing Patient Demographics to transfer the patients' information back to the previous billing software. Ms. Correa was surprised Bouziotis asked Bianca to transition the billing information because she had no billing experience or office management experience.

31. On April 30, 2019, Correa was very sick with a bad sinus infection. However, she reported to work and began her tasks. Soon thereafter, in the course of discussing new hires'

employment information and documentation, Bianca became agitated and started slamming doors. Ms. Correa wanted to diffuse the tension by speaking calmly, but Bianca began typing up her letter of resignation. Ms. Correa informed Bianca that was not necessary, but Bianca started raising her voice, slamming doors again and then walked out for lunch.

32. Ms. Correa was upset and went to her office to straighten up. Then, Ms. Correa went to see Bouziotis, told Bouziotis she was not feeling well, and that she was going home to rest. She reminded Bouziotis that she had a scheduled doctor's appointment the following day. Ms. Correa also spoke to Bouziotis about how the receptionist was yelling at her when she was just trying to do her part in the office.

33. That night, Ms. Correa text messaged Bouziotis explaining how she felt that Bouziotis as an employer, should take note of her concerns and sit with whatever parties involved to try and rectify any concerns and come to a resolution. Bouziotis never responded.

34. Ms. Correa was informed the next day by a family member, while she was at her doctor's appointment, that her position was listed on Indeed.com. In fact, other staff at Total Care confirmed that there was an ad placed for "Office Manager."

35. On May 5, 2019, Ms. Correa went into the office to speak to Bouziotis. Upon walking into her office, she noticed that her desk and files were disheveled, and boxes had been moved. Bouziotis walked in directly after her and said "I am phasing your position out. You cannot run the office."

36. Ms. Correa quickly mentioned she was aware that Bouziotis had already posted the job on Indeed and questioned why if Bouziotis was not happy with her performance why she had not received any prior verbal and/or written warnings.

37. Ms. Correa reminded Bouziotis that she brought in more revenue per month than billers before or after her. Bouziotis agreed that Ms. Correa was an excellent biller. Ms. Correa asked "Well, if I am an excellent biller, why have you replaced me with two billing companies in the last year?" "This has to do with my health, you have even told me to not speak about my colostomy bag to anyone in the office." Bouziotis replied, "Believe me, if I wanted to fire you because of your health, my attorney gave me many reasons as to why I can." Ms. Correa quickly asked, "Why are you and your attorney discussing my health?" Bouziotis did not have an answer and Ms. Correa asked if she could leave her office so she may pack her belongings. Bouziotis informed Ms. Correa that he would not be writing a formal letter of termination, would not dispute unemployment, would pay her medical and dental insurance for the rest of the month and provide a refence in the future. Then, Ms. Correa began to pack and was accompanied by Bouziotis' father, who hovered over her as she was packing. Bouziotis' father asked to see everything she was packing. Finally, Bouziotis' father escorted Ms. Correa out of the building.

38. Upon her wrongful termination, Ms. Correa began and continues to suffer severe mental health issues, including anxiety and trouble sleeping related to the stress and unfair treatment she endured at Total Care.

39. In fact, Ms. Correa has been diagnosed with Situational Depression by her treating mental health professional. However, for several months, Ms. Correa was unable to obtain proper medical treatment due to the loss of her insurance coverage.

**Count I**
**(New Jersey Law Against Discrimination)**
**(Disability/ Handicap Discrimination)**

40. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

41. The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, by discriminating against Plaintiff due to Plaintiff's handicap and/or disability.

42. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

43. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count II
### (New Jersey Law Against Discrimination)
### (Retaliation)

44. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

45. The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, by retaliating against Plaintiff for engaging in the protected activity of taking disability leave and/or medical leave and/or requesting reasonable accommodations due to the medical/disability leave.

46. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.

        Plaintiff's damages have been experienced in the past, and they will continue into the future.

47. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count V
### (Breach of Express Contract)

48. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
49. Defendants had contractual obligations to plaintiff that were set forth in their oral representations and/or their handbook, termination letter, and other employment documents.
50. Defendants' actions breached the contractual obligations set forth in these documents.
51. Defendants' actions give rise to the claim of breach of express contract.
52. As a direct and proximate result of the actions of Defendants, Plaintiff has been damaged.

## Count VI
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

53. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
54. Defendants had contractual obligations to plaintiff as reflected above.
55. Defendants have breached these obligations.
56. Defendants' actions give rise to the claim of breach of the implied covenant of good faith and fair dealing.
57. As a direct and proximate result of the actions of Defendant, Plaintiff has been damaged.

## Count VII
### (Breach of Implied Contract)

58. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
59. Defendants made numerous oral representations.
60. Defendants breached these oral representations.
61. Defendants' actions give rise to the claim of breach of implied contract.
62. As a direct and proximate result of the actions of Defendants, Plaintiff has been damaged.

## Count VIII
### (New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.*)

63. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
64. The actions of Defendants give rise to a violation of the New Jersey Wage and Hour Law.
65. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

66. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count IX
### (New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1, *et seq.*)

67. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
68. The actions of Defendants give rise to a violation of the New Jersey Wage Payment Act.
69. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.
70. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count X
### (Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.*)

71. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.
72. Plaintiff realleges and incorporates herein the above paragraphs.
73. The actions of Defendants give rise to a violation of the FLSA.
74. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.

Plaintiff's damages have been experienced in the past, and they will continue into the future.

75. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

- A. Compensatory damages of not less than $350,000;
- B. Damages for lost wages and benefits, back pay, front pay (or reinstatement);
- C. Damages for humiliation, mental and emotional distress;
- D. Statutory damages, if applicable;
- E. Punitive damages and or liquidated damages where permitted by law;
- F. Attorneys' fees and costs of suit;
- G. Lawful interest, including pre-judgment interest on lost wages;
- H. Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and
- I. Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, David M. Taus, Esq. is hereby designated as trial counsel on behalf of plaintiff.

## R. 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:     May 5, 2021

                                              **SCHWARTZ, HANNA, OLSEN & TAUS, P.C.**
                                              *Attorneys for Plaintiff*

                                              /s/    David M. Taus
                           **By:** _____
                                                  David M. Taus

# Civil Case Information Statement

**Case Details: SOMERSET | Civil Part Docket# L-000641-21**

**Case Caption:** CORREA YVONNE  VS TOTAL CARE PHYSICAL  THERAPY P
**Case Initiation Date:** 05/05/2021
**Attorney Name:** DAVID M TAUS
**Firm Name:** SCHWARTZ, HANNA, OLSEN & TAUS, P.C.
**Address:** 3 AMBOY AVE
METUCHEN NJ 08840
**Phone:** 9083222333
**Name of Party:** PLAINTIFF : Correa, Yvonne
**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?**  NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Yvonne Correa?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/05/2021                                                                                                       /s/ DAVID M TAUS
Dated                                                                                                                  Signed

YVONNE CORREA

Plaintiff

20210510144140

Superior Court Of New Jersey

vs

SOMERSET Venue

TOTAL CARE PHYSICAL THERAPY, PC., ET AL

Defendant

Docket Number: SOM L 641 21

**Person to be served** (Name and Address):
ANASTASIOS BOUZIOTIS
719 ROUTE 206, SUITE 104
HILLSBOROUGH  NJ  08844
**By serving:** ANASTASIOS BOUZIOTIS

# AFFIDAVIT OF SERVICE
(For Use by Private Service)

**Attorney:** DAVID M. TAUS, ESQ.

Cost of Service pursuant to R. 4:4-3(c)

**Papers Served:** SUMMONS AND COMPLAINT, TRACK ASSIGNMENT
NOTICE, DEMANDS, CERTIFICATIONS

$ _____.____

**Service Data:**    [X] Served Successfully        [ ] Not Served

Name of Person Served and relationship/title:

Date/Time:    5/12/2021 2:08 PM

ANASTASIOS BOUZIOTIS

[X] Delivered a copy to him/her personally

SELF

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[ ] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

**Description of Person Accepting Service:**

SEX: M    AGE: 36-50   HEIGHT: 5'4"-5'8"    WEIGHT: 161-200 LBS.    SKIN: WHITE    HAIR: BROWN    OTHER: _____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:        Date/Time: _____
                           Date/Time: _____
                           Date/Time: _____

Other:

**To Be Used Where Electronic Signature Not Available**
**Served Data:**
Subscribed and Sworn to me this

_____ day of _____, 20 _____

Notary Signature: _____

_____    _____
Name of Notary      Commission Expiration

**Docusign Court Approved E-Signature**

I, NUNO VEIGA,
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

*NUNO VEIGA*
D5B70A24E9EF42C...                    05/12/2021
Signature of Process Server              Date

Name of Private Server: NUNO VEIGA  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952

20210510144400

| | |
|---|---|
| YVONNE CORREA<br><br>Plaintiff<br><br>vs<br><br>TOTAL CARE PHYSICAL THERAPY, PC., ET AL<br><br>Defendant | Superior Court Of New Jersey<br><br>SOMERSET Venue<br><br>Docket Number: SOM L 641 21 |

**Person to be served** (Name and Address):
TOTAL CARE PHYSICAL THERAPY, PC.
719 ROUTE 206, SUITE 104
HILLSBOROUGH NJ 08844
**By serving:** TOTAL CARE PHYSICAL THERAPY, PC.

**Attorney:** DAVID M. TAUS, ESQ.

**Papers Served:** SUMMONS AND COMPLAINT, TRACK ASSIGNMENT NOTICE, DEMANDS, CERTIFICATIONS

**Service Data:**   [X] Served Successfully   [ ] Not Served

Date/Time:   5/12/2021 2:09 PM

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

## AFFIDAVIT OF SERVICE
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

Name of Person Served and relationship/title:

ANASTASIOS BOUZIOTIS

PRESIDENT

**Description of Person Accepting Service:**

SEX: M   AGE: 36-50   HEIGHT: 5'4"-5'8"   WEIGHT: 161-200 LBS.   SKIN: WHITE   HAIR: BROWN   OTHER: _____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:   Date/Time: _____
                      Date/Time: _____
                      Date/Time: _____

Other:

**To Be Used Where Electronic Signature Not Available**
**Served Data:**
Subscribed and Sworn to me this

_____ day of _____, 20 _____

Notary Signature: _____

_____   _____
Name of Notary         Commission Expiration

**Docusign Court Approved E-Signature**

I, NUNO VEIGA,
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

*NUNO VEIGA*
_____   05/12/2021
Signature of Process Server   Date

Name of Private Server: NUNO VEIGA   Address: 2009 Morris Avenue UNION, NJ 07083   Phone: (800) 672-1952

```
SOMERSET COUNTY SUPERIOR COURT
40 NORTH BRIDGE STREET
1ST FLR PO BOX 3000
SOMERVILLE      NJ 08876-1262
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (908) 332-7700
COURT HOURS  8:30 AM - 4:30 PM

                        DATE:    MAY 05, 2021
                        RE:      CORREA YVONNE  VS TOTAL CARE PHYSICAL  THERAPY P
                        DOCKET: SOM L -000641 21

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON ROBERT G. WILSON

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     001
AT:  (908) 332-7700.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                                    ATT: DAVID M. TAUS
                                    SCHWARTZ, HANNA, OLSEN & TAUS,
                                    3 AMBOY AVE
                                    METUCHEN        NJ 08840

ECOURTS
```